**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**JACKSON DIVISION**

**SHOCA SHON OWENS**
**o/b/o Z.S.O.**                                                    **PLAINTIFF**

**V.**                                          **CIVIL ACTION NO.  3:12CV151 CWR-LRA**

**CAROLYN W.  COLVIN,**
**ACTING COMMISSIONER OF SOCIAL SECURITY**              **DEFENDANT**


**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**


Shoca Owens appeals the final decision denying the application for childhood

Supplemental Security Income ("SSI") benefits filed on behalf of her infant daughter,

Z.S.O.   Before the Court is the Motion for Summary Judgment [10] filed by Owens

[hereinafter "Plaintiff"] and the Motion for an Order Affirming the Commissioner's

Decision [12], pursuant to 42 U.S.C. § 405(g), filed by Carolyn W. Colvin, Acting

Commissioner of Social Security [hereinafter "Defendant"].  Having carefully considered

the hearing transcript, the medical records in evidence, oral arguments, and all the

applicable law, the undersigned recommends that the decision be remanded for the

reasons that follow.

**Facts and Procedural Background**

Plaintiff's mother filed an application for SSI on August 3, 2009, alleging that her

then nearly 4 ½ month-old daughter had been disabled since her birth on March 23, 2009.

The application was denied initially and on reconsideration.  She appealed the denial, and

on October 12, 2010, Administrative Law Judge Louis J. Volz ("ALJ") rendered an

unfavorable decision, finding that she had not established that her daughter was disabled

within the meaning of the Social Security Act.  The Appeals Council denied Plaintiff's request for review and she now appeals that decision.

Plaintiff was born two months prematurely on March 23, 2009, weighing two pounds, fourteen ounces.  She was in critical but stable condition and treated for apnea, jaundice and hypernatremia.  She was discharged 40 days later weighing approximately five pounds, three ounces.  At her administrative hearing, she was approximately 17 months old.  Her mother testified that she suffers from asthma and had to be treated as a newborn because she was developmentally delayed.

After reviewing all the evidence, the ALJ concluded that Z.S.O. was not disabled under the Social Security Act and was not entitled to childhood disability benefits pursuant to 20 C.F.R. § 416.924(a).  At step one of the three-step sequential evaluation process, the ALJ found that Z.S.O. had not engaged in substantial gainful activity since August 3, 2009, the application date.  At steps two and three, the ALJ found that while Z.S.O.'s asthma and developmental delays secondary to her premature birth were severe, the medical evidence did not support listing-level severity.  With regard to the six functional domains, the ALJ concluded that Plaintiff had less than marked limitations in health and physical well-being and no limitations in acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, and caring for herself.

## Childhood Disability Standard

In order for a child to be found disabled and entitled to SSI benefits, he or she must have a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I).  When evaluating a child's eligibility for disability benefits, an ALJ engages in a three-step sequential process, which considers:

(1)     whether the child is doing substantial gainful activity;

(2)     if not, whether the child has a medically determinable "severe" impairment or combination of impairments; and

(3)     if so, whether the child's impairment or combination of impairments meets, medically equals, or functionally equals the severity of an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.

*See* 20 C.F.R. § 416.924 (b)-(d).  If a child's impairment does not meet, medically equal, or functionally equal a listed impairment, the child will not be considered disabled. Functional equivalency is measured according to six domains of function: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being.  20 C.F.R. § 416.926a(b)(1); *see also Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000) (citing *Sullivan v. Zebley* 493 U.S. 521, 530-32 (1990)).  To be functionally equivalent to a listing, the impairment must result in either a "'marked' limitation in two domains of functioning or an 'extreme' limitation in one domain ... ." 20 C.F.R. § 416.926a(a).  A marked limitation interferes seriously with the child's ability

3

to "independently initiate, sustain, or complete activities," while an extreme limitation "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities."  20 C.F.R. §§ 416.926a(e)(2)(i) & 416.926a(e)(3)(i).

Each domain also describes what a child should be able to do throughout five age categories: (1) "newborns and young infants" (birth to age 1); (2) "older infants and toddlers" (age 1 to age 3); (3) "preschool children" (age 3 to age 6, including children in kindergarten but not first grade); (4) "school-age children" (age 6 to age 12, including children in first grade through middle school); and (5) "adolescents" (age 12 to age 18). 20 C.F.R. § 416.926a(g)(2), (h) (2), (i)(2), (j)(2), (k)(2), (l)(2).

## Standard of Review

This Court's review of the ALJ's decision is limited to two basic inquiries: "(1) whether there is substantial evidence in the record to support the [ALJ's] decision; and (2) whether the decision comports with relevant legal standards."  *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (citing *Carrier v. Sullivan*, 944 F.2d. 243, 245 (5th Cir. 1991)). *See also Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The Fifth Circuit defines substantial evidence as "that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance."  *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (quoting *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992)).  Any findings by the Commissioner that are supported by substantial evidence are conclusive.  *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995).

4

**Discussion**

Plaintiff argues that the ALJ erred in failing to appoint her legal representation, and in failing to properly evaluate presumptive disability. The Court makes the following findings:

**1.    Whether the ALJ erred in allowing Plaintiff's mother to proceed without counsel during the administrative hearing.**

A disability claimant has a statutory right to representation in Social Security proceedings, and must receive adequate notice of his right to representation. 42 U.S.C. § 406; 20 C.F.R. § § 404.1706, 1720 and 416.1506, 1520. *Castillo v. Barnhart*, 325 F.3d 550, 552 (5th Cir. 2003). A claimant may waive the right if he is given sufficient information to enable him to decide intelligently whether to retain counsel or proceed *pro se*. *Norden v. Barnhart*, 77 F.App'x 221 (5th Cir. 2003) (citing *Clark v. Schweiker*, 652 F.2d 399, 403-04 (5th Cir. 1981)).

Plaintiff argues that her waiver of counsel was not knowingly and intelligently made because the ALJ failed to orally provide adequate notice of the right to counsel at the administrative hearing. She maintains that the ALJ did not inform her mother that an attorney could help with the proceedings and with securing medical evidence. She also asserts that the ALJ failed to advise her mother that representation could be obtained under a contingency fee contract or that legal aid organizations were available. She further alleges that the ALJ never notified her that attorney fees are limited to a

percentage of the past-due benefits and are scrutinized by the Social Security Administration.

Contrary to her arguments on appeal, the record reflects that Plaintiff's mother received several written notices prior to the administrative hearing which provided detailed information regarding the right to representation.  Among the notices is a form entitled "Your Right to Representation" which explains, *inter alia*, that a private attorney or representative can provide assistance and collect a fee subject to the pre-approval of the agency.  A list of organizations providing free legal services was also attached thereto. Additional notice was also provided in the Notice of Hearing, Notice of Disapproved Claim, and Notice of Reconsideration.[1]  The ALJ also gave the following opening statement at the administrative hearing:

> ALJ:  And because you're unrepresented, ma'am, I have some things that I have to tell you.  We can proceed with the hearing today, but I still have to advise you it's your prerogative if you want to seek a representative, a lawyer or a non-lawyer, I can postpone this matter. I will postpone it on one occasion.  And my docket here again I think is going to be in the middle of November.  I have hearings in October here also but the docket is already full.  So if you want to postpone that would be until right before Thanksgiving.  If you want to proceed with the hearing today based on the medical evidence you have and your testimony, we can proceed with the hearing today. It's up to you.
>
> WTN:  Yes, sir.
>
> ALJ:  You want to proceed.  Okay.
>
> WTN:  Yes, sir.[2]

---

[1]ECF Nos. 9-2, pp. 2-4; 9-4, pp. 3,10,17-20.

[2]ECF No. 9-2, pp. 30.

The Court finds the ALJ's comments, albeit brief, were adequate when combined with the written notices.  The Fifth Circuit has held that the administration's written notices – coupled with an ALJ's notice at the administrative hearing of the right to counsel – is sufficient to inform a claimant of her statutory right to counsel.  *Castillo,* 325 F.3d at 552 ("We conclude that the numerous written notices Castillo received – along with the ALJ's reminder to Castillo at the hearing of the right to counsel – sufficiently informed her of her right to an attorney, and that she validly consented to proceed without representation.") (citing *Brock*, 84 F.3d at 729 n. 1).  Nothing of record indicates that Plaintiff's mother suffered from a mental impairment or was otherwise incapable of comprehending the written notices she received, and she makes no such allegation on appeal.  *See Hughes ex rel. T.H. v. Astrue*, 493 F. App'x.  594 (5th Cir. 2012) (unpublished).  The hearing transcript also reflects that she executed a written waiver and submitted it at the administrative hearing.  *Byrd v. Commissioner of Social Sec*., 368 F.App'x. 542 (5th Cir.  2010) (unpublished).  The issue is without merit.

> **2.**     **Whether the ALJ properly evaluated whether Plaintiff's impairments met or functionally equaled a listing.**

Plaintiff contends in her second assignment of error that the ALJ failed to properly evaluate whether her asthma and the developmental delays resulting from her premature birth satisfied listing criteria.  A disability claimant has the burden of proving that his condition meets or equals a listing, and he or she must manifest all of the specified criteria of a particular listing to meet this burden.  *Zebley,* 493 U.S. at 530.  If a claimant's

condition meets or equals the "listed" impairments, he or she is conclusively presumed to be disabled.

In this case, Plaintiff alleges that the ALJ failed to properly evaluate whether her asthma meets or equals Listing 103.03B.  To meet this listing, social security regulations require the medical evidence to show in relevant part:

> B.  Attacks (as defined in 3.00C) in spite of prescribed treatment and requiring physician intervention, occurring at least once every 2 months or at least six times a year.  Each inpatient hospitalization for longer than 24 hours for control of asthma counts as two attacks, and an evaluation period of at least 12 consecutive months must be used to determine the frequency of attacks[.]

20 C.F.R. pt. 404, subpt. P, app. 1,103.03B.  At least six asthma attacks in a year are required to meet the listing.  "Asthma attacks" are further defined in Listing 3.00C as "prolonged symptomatic episodes lasting one or more days and requiring intensive treatment, such as intravenous bronchodilator or antibiotic administration or prolonged inhalational bronchodilator therapy in a hospital, emergency room, or equivalent setting." 20 C.F.R. pt. 404, subpt. P, app. 1, § 3.00C.

Plaintiff notes, and the Commissioner does not dispute, that the ALJ failed to identify the asthma listing or the evidence he considered in determining that her asthma did not meet or equal a Listing.  Although the ALJ is not required to do an exhaustive point-by-point discussion, his sole relevant finding was that Plaintiff takes certain medication on a daily basis that controls her asthma.  A bare and summary conclusion that Plaintiff does not meet or equal a listing is "beyond meaningful judicial review." *Audler v. Astrue*, 501 F.3d 446, 448) (5th Cir. 2007) (quoting *Clifton v. Chater*, 79 F.3d

1007, 1009 (10th Cir.1996)).  The Social Security Act requires the ALJ to "discuss the evidence offered in support of [plaintiff's] disability and to explain why [he] found [plaintiff] not to be disabled at that step." *Id*.  An ALJ's failure to adequately explain his step-three finding does not require remand, however, unless it affects the claimant's substantial rights.  *Id*.  To make this showing, Plaintiff must demonstrate that her impairments met or equaled a Listing.  *Id.*

Here, it is undisputed that Z.S.O. was diagnosed and treated for asthma, but a diagnosis alone is insufficient.  Hospital records from August 2009 through August 2010 reflect that she was treated as follows for various respiratory problems:  (1) August 21, 2009, through August 24, 2009, for pneumonia with "asthmatic components;" (2) November 9, 2009, through November 10, 2009, for respiratory distress, bronchiolitis, wheezing, and metabolic acidosis; (3) January 24, 2010, through January 25, 2010, for "asthmatic bronchitis;" (4) July 6, 2010, through July 8, 2010, for bronchiolitis and strep throat; and, (5) on August 7, 2010, for an upper respiratory infection.[3]

 Plaintiff maintains that her first three hospital visits alone are sufficient to establish the number of attacks and substantive requirements to satisfy the asthma listing. The Commissioner counters that neither are met; she specifically asserts that Plaintiff's visits during the relevant twelve-month period amount to only four attacks.  It is not readily apparent from the medical evidence and arguments submitted on appeal how the

---

[3]ECF Nos. 9-8, pp. 58-59; 9-9, pp. 36-38; 9-13, pp. 17-18; 25-31; 38-41.

Commissioner arrives at this number.  The Commissioner and Plaintiff are in complete disagreement as to which of Plaintiff's hospital admissions are considered "asthma attacks" as defined in the listing.

Absent any analysis by the ALJ or medical expert, and given the overall ambiguity of the medical evidence and arguments made on appeal, the Court is simply unable to conduct an informed judicial review as to whether substantial evidence supports the ALJ's finding that the listing criteria for asthma were not met.  Plaintiff's rights may have been substantially affected by the ALJ's failure to perform the listing analysis for asthma.  *Audler*, 501 F.3d at 447.  For this reason, and in the interest of protecting the minor child's rights, the undersigned recommends that this issue be remanded for further development, including expert analysis as to whether Plaintiff's asthma condition meets or medically equals Listing 103.3B.

Plaintiff also argues that the ALJ erred in failing to find that developmental delays secondary to her premature birth did not functionally equal a listed impairment.  As noted earlier, functional equivalence requires a finding of at least one "extreme" limitation in one domain or two "marked" limitations in two domains.  In this case, clinic records from the University of Mississippi Medical Center in June 2009, indicate that Plaintiff's mother reported that she was bottle feeding well, and voiding and stooling consistently at three months old.  Her physical examination indicated, among other things, that she was alert and her tone was intact.  Her length was in the 50th percentile and her weight was in the 75th percentile.  The clinician noted that her development was normal for her age, and

noted that she was a "[g]rowing premie with excellent weight gain since discharge." This examination was consistent with the findings of the state agency reviewer in September 2009, who noted that Plaintiff had a normal growth weight at 11.7 pounds, and that she coos, laughs, and recognizes her parents' voice and touch. A function report completed by Plaintiff's mother a month earlier similarly lists no vision or hearing problems, and no limitations in any activities.[4]

In November 2009, however, Plaintiff was evaluated by the First Steps Early Intervention Program at the Neshoba General Hospital Outpatient Rehabilitation Interdisciplinary Center for concerns regarding her speech-language development, motor development, and feeding. She was approximately seven months old at the time. A physical therapist, speech-language pathologist, and occupational therapist conducted a comprehensive evaluation to assess her developmental functioning in the following five areas: physical, adaptive behavior, social-emotional, cognitive, and communication.

Upon examination, Plaintiff could attend to objects as they moved across her visual field; make good eye contact with speaker when spoken to and in speech games; sit supported for three seconds; initiate rolling halfway to her side; midline object hold and transfer; place her hands on the bottle to help feed herself; coo at contact; smile when spoken to; laugh to show happiness; hold objects in her hand; look at sounds when presented; and use vowel sounds. She was otherwise delayed in all areas of development.

---

[4]ECF Nos. 9-6, pp. 4-8; 9-8, pp. 14-15, 62-67.

Specifically, she had a 5-6 month delay in the physical, self-help, and social functional areas, and up to a 2-month delay in academic/cognitive and communication/language. She had a 57% delay in her gross and fine motor skills, 29% delay in her adaptive skills; 14% delay in social skills; and a 71 % delay in cognitive and communication development. As treatment, examiners recommended that the family continue routine and play-based developmental stimulation in all domains; that the speech-language pathologist address her difficulty with developing language and swallowing skills; and, that the physical and occupational therapists address her delay in  motor skills.[5]

Progress notes from January 2010 through April 2010 reflect that Plaintiff's development improved in certain functional areas. She tolerated facial stimuli, improved her visualization and ability to reach for objects, and opened her mouth when she saw a spoon. She also had increased gestures and eye contact, showed interest in playing with toys, and imitated the clinician on 7 out of 10 trials. Her six-month review in April 2010 also indicated that several of the goals outlined in the initial evaluation were met. Examiners noted that she could "crawl, move objects in front of her, hold items in her hand, eat foods with thick texture, play with toys by mouthing, say "dada", make vowel sounds, calm herself with her pacifier, maintain eye contact and smile during play." [6]

---

[5]ECF No. 9-8, pp. 69-83.

[6]ECF No. 9-9, pp. 50-70; 9-10, pp. 2-20.

The ALJ acknowledged that the results of the comprehensive developmental assessment by First Steps "evidenced a delay in skills in all areas of development including the physical, self-help, social cognitive and communication domains." [9-2, p. 19].   However, he found that the function report "indicates that none of the claimant's activities or abilities is limited by her conditions," and that Z.S.O. had less than marked limitations in health and physical well-being, and no limitations in any other domains. [9-2, p.19].  There was little discussion specifically regarding the 5-6 month delay in some areas or the performance percentile as a result of the delay.

After the November evaluation, the Plaintiff underwent occupational, physical and speech therapy, and according to progress notes and a six-month review, some of the developmental goals outlined in the initial evaluation were met, but some were not. [9-9, pp. 55-1].  Importantly, in this April 2010 review, examiners do not quantify the level of developmental delay that remained at the time of the review.  There is no subsequent evaluation of the child's new range of functioning after her general improvement or assessment regarding the current level of delay, if any, or her performance percentile.  Nonetheless, the ALJ found that "[a]lthough the claimant has received various forms of treatment for the allegedly disabling symptoms, which would normally weigh somewhat in the claimant's favor, the record also reveals that the treatment has been generally successful in controlling those symptoms." [9-2, p. 19].

The record is void of any finding regarding the Plaintiff's subsequent functional level. Absent such evidence, this Court simply cannot determine whether the ALJ's decision is based on substantial evidence or not.  *See Audler*, 501 F.3d at 447.

On remand, the ALJ should:

1.    Further develop the medical record regarding all of  Plaintiff's relevant asthma or asthma-related medical treatments[7] and reconsider whether Plaintiff's impairments meet the requirements for the asthma listing;

2.    Further develop the record regarding Plaintiff's functional domain limitations and developmental delay, including a determination of Plaintiff's diagnosed impairments, if any; and,

3.    Evaluate Plaintiff's impairments in the appropriate age group, setting forth with greater specificity his findings with regard to each domain.[8]

It is noted that the decision to remand in this case does not reflect any particular disposition as to whether the Plaintiff should be found disabled or not.

For these reasons, it is the opinion of the undersigned United States Magistrate that this cause be remanded for further proceedings consistent with this Report and Recommendation.  The Motion for Summary Judgment [10] filed by Owens should be **granted** only to the extent that the case is remanded to the Commissioner; the Motion for an Order Affirming the Commissioner's Decision [12] should be **denied** without prejudice.

---

[7]Specifically, the ALJ should obtain a medical opinion regarding whether or not Plaintiff's treatments for pneumonia and other respiratory conditions (not specifically deemed "asthmatic" in the medical records) occurred as a result of her asthma and/or premature birth.

[8]In his findings, the ALJ evaluated Plaintiff in the newborn and young infants category even after she was past that age.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Rule 72(a)(3) of the *Local Uniform Civil Rules of the United States District Courts for the Northern District of Mississippi and the Southern District of Mississippi*, any party within 14 days after being served with a copy of this Report and Recommendation, may serve and file written objections.  The objecting party must specifically identify the findings, conclusions, and recommendations to which he or she objects.  Within 7 days of the service of the objection, the opposing party must either serve and file a response or notify the District Judge that he or she does not intend to respond to the objection.

The parties are hereby notified that failure to file timely written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  28 U.S.C. § 636, Fed. R. Civ. P. 72(b) (as amended, effective December 1, 2009); *Douglas v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

This the 29th day of August 2013.


/s/  Linda R. Anderson
UNITED STATES MAGISTRATE JUDGE